IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBBIE R. BRESLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-100-SPS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Robbie R. Breslin requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1]Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born July 10, 1961, and was fifty-two years old at the time of the most recent administrative hearing (Tr. 52). He completed his GED in 1980, and has worked as cook and metal fabrication helper (Tr. 38, 286). The claimant alleges inability to work since October 9, 2007 due to spondylosis in the spine, sclerosis, spurring in spine, and severe rotator cuff impingement on left shoulder (Tr. 282).

## Procedural History

On September 14, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 18, 2012 (Tr. 105-122), but the Appeals Council vacated ALJ Gabbard's opinion and remanded the case back to him with instructions on remand (Tr. 129-131). On remand, ALJ Gabbard conducted a second administrative hearing and again determined that the claimant was not disabled in a written decision dated September 11, 2014 (Tr. 14-40). The Appeals Council then denied review, so ALJ Gabbard's 2014 opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform less than the full

range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit for six hours in an eight-hour workday, but only occasionally stoop, crouch, and reach bilaterally. He further determined that the claimant could do no overhead reaching. Additionally, he found that the claimant could perform unskilled work (work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) where supervision is simple, direct, and concrete; interpersonal contact with supervisors and coworkers is incidental to the work performed, *e. g.*, assembly work; and he could have no contact with the general public (Tr. 21). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, conveyor line bakery worker and semiconductor bonder (Tr. 38-39).

**Review**

The claimant contends that the ALJ erred by: (i) improperly determining there was work she could perform, and (ii) by improperly assessing the opinions of two treating physicians, Dr. Umar Saeed and Dr. Boyce Coleman. The Court finds these contentions unpersuasive for the following reasons.

On remand, the ALJ determined that the claimant had the severe impairments of lumbar and cervical degenerative disc disease, depression, and polysubstance abuse, as well as the nonsevere impairments of rotator cuff tear, degenerative disc disease of the left shoulder, and bilateral carpal tunnel syndrome (Tr. 17). The medical evidence relevant to this appeal reveals that Dr. Coleman treated the claimant about every four

months from December 2010 to December 2011 and treatment notes generally recited the claimant's reports of pain and requests for pain medication (Tr. 939-941, 951-952). On June 25, 2012, Dr. Coleman completed a Medical Source Statement (MSS) of the claimant's physical ability to work, indicating that the claimant could occasionally lift up to ten pounds and frequently lift up to 7.5 pounds, stand/walk less than two hours total in an eight-hour workday, sit less than two hour total in an eight-hour workday (and continuously for an hour at a time), and that he would be required to lie down during the day (Tr. 963-964). Additionally, Dr. Coleman indicated that the claimant could never climb, balance, stoop, kneel, crouch, or crawl, and only occasionally reach, handle, finger, and feel (Tr. 964). In support, he cited to an MRI of the claimant's cervical spine and lumbar spine (Tr. 964). A 2007 MRI of the claimant's cervical spine had revealed spinal stenosis that was worse at C5-C6 and C6-C7 with bilateral neural foraminal stenosis (Tr. 391). This had existed at least as far back as 2000, when the claimant was noted to have mild degenerative change of the cervical spine with osteophyte formation anteriorly and disc space narrowing at C5-C-6 and C6-C7 (Tr. 492). These findings were later confirmed in 2008 which revealed moderately extensive degenerative and discogenic change, with associated deforming spondylosis present bilaterally (Tr. 729). He apparently had no real changes to his condition as recently as May 2013, when his request for an additional MRI was denied and clinical findings showed no myelopathy/radicular changes (Tr. 1241-1242).

Many of the claimant's treatment notes are from various Veteran's Administration treatment facilities. Dr. Saeed treated the claimant at one such facility in the 2007-2009

time period.  His treatment notes repeatedly limited the claimant to lifting no more than ten pounds until April 2009 (Tr. 576, 585, 592, 596, 866).  On April 15, 2009, Dr. Kent Braden examined the claimant from a pain medicine perspective, and the physical exam was unremarkable except for fungus under his toenails, bad oral hygiene, mild atrophy and stiffness of the left shoulder and fair neck and back motion (complaining of some pain with palpation), hypalgesia of hands to mid upper arms, with the remainder of the general and neuro exam normal (Tr. 868).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony, as well as the medical evidence contained in the record.  As relevant to this appeal, the ALJ discussed all of the opinion evidence in the record, including those of Dr. Coleman and Dr. Saeed, as well as their treatment records.  As to Dr. Coleman, the ALJ summarized his treatment records, noting they contained no abnormal findings on examination and largely consisted of the claimant's reports of pain (Tr. 25).  He also summarized Dr. Coleman's MSS finding, but did not find his opinion controlling because, *inter alia*, his treatment notes contained no abnormal findings and an MRI showed worsening stenosis but no nerve root impingement of effect on the spinal cord (Tr. 34).  He continued, noting the factors he was required to consider, finding that Dr. Coleman was not a specialist, his treatment was largely medication refills every four months, and his reliance on an MRI did not support his MSS (Tr. 34-35).  Furthermore, the ALJ found that diagnostic images did not show any impingements, he had normal range of motion and good hand skills and strength at two consultative examinations, he appeared in no acute distress to physicians despite complaining of disabling pain, and the

MSS was inconsistent with the claimant's "ability to engage in karate fighting with his son in March 2013" (Tr. 35). As to Dr. Saeed's treatment records, the ALJ specifically noted that VA treatment records had the claimant lifting no more than ten pounds, but the ALJ gave these findings little weight because such a limitation was not supported by diagnostic studies and this is only found in *earlier treatment notes*. The ALJ specifically noted that the claimant had no such limitations after April 2009 and that findings were "predominantly within normal limits" (Tr. 35). At step five, the ALJ found that the claimant could perform the jobs of conveyor line bakery worker and semiconductor bonder, which are light and sedentary jobs, respectively (Tr. 39).

The claimant first contends that the ALJ failed to properly analyze the opinions of Dr. Coleman and Dr. Saeed as the claimant's treating physicians. The Court finds that the ALJ did not, however, commit any error in his analysis. As they are treating physicians, the ALJ was required to give these medical opinions controlling weight if their opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that these opinions were not entitled to controlling weight, he was nevertheless required to determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300.

Those factors are: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject any medical opinions entirely, he was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ's analysis of both these physicians' opinions is set forth above. The Court finds that the ALJ considered these opinions in accordance with the appropriate standards and properly concluded they were not entitled to controlling weight. In fact, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including Dr. Coleman and Dr. Saeed, whose opinions were contradicted by their own treating notes and the MRI studies and further examinations in the record, as discussed at length by the ALJ. The ALJ thus did not commit error in failing to include any limitations imposed by Dr. Coleman or Dr. Saeed in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight

assigned these opinions, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

The claimant also argues that the ALJ erred in making step five findings regarding the jobs he could perform, the light job of conveyor line bakery worker and the sedentary job of semiconductor bonder. As to the sedentary job, the claimant asserts that, assuming he can only perform sedentary work, he should be considered disabled under the Medical-Vocational Guidelines once he obtained the age of fifty and therefore the ALJ cannot rely on a sedentary job to find him not disabled. As to the light job, the claimant asserts that the ALJ made no findings as to whether the job of conveyor line bakery worker, standing alone, existed in significant numbers because he making a finding of significant numbers based on both jobs (Tr. 40). Even assuming *arguendo* that the claimant's argument as to the sedentary job is accepted, the Court finds that the ALJ made sufficient findings regarding whether work existed in significant numbers.

The determination that work can be performed in significant numbers is considered case-specific, and "the issue of numerical significance entails many fact-specific considerations requiring individualized language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004), *quoting Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). The Tenth Circuit has held that this finding is not limited to local or regional numbers, but is instead a determination of whether work exists in significant numbers in the regional *or* national

economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Here there is no need for reversal because the Court is persuaded that 54,000 jobs available nationally for the conveyor line baker worker is significant. *See Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) ("The *Rogers* [*v. Astrue*, 312 Fed. Appx. 138, 142 (10th Cir. 2009)] decision came out the same year as *Raymond*, and that court implicitly found, as a matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The Court is persuaded by *Rogers* and finds that 32,000 utility tractor jobs in the national economy is also significant."). *Compare Rogers v. Astrue*, 312 Fed. Appx. 138, 141 (10th Cir. 2009) (finding no error where "the VE testified that, on the basis on his professional experience, 11,000 sedentary hand packager jobs existed in the national economy, the apparent conflict between the DOT and the VE's testimony regarding the job's exertional requirement was reasonably explained, and the ALJ could rely on that testimony as substantial evidence to support her determination of nondisability.") *with Norris v. Barnhart*, 197 Fed. Appx. 771, 777 (10th Cir. 2006) (reversing and remanding where the ALJ did not find whether each job, "standing alone, constituted a significant number within the meaning of 42 U.S.C. § 423(d)(2)(A)). *See also Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (where the two remaining available jobs cited by the ALJ, there were 11,000 jobs regionally and 152,000 nationally, "we do not believe any reasonable factfinder could have determined that suitable jobs did not exists in significant numbers in either the region where Ms. Stokes lives or several regions of the country."). As discussed above, the Court finds that substantial evidence supports the ALJ's decision.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. The ALJ specifically noted every medical record available in this case, *and still concluded* that he could work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**